**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**


**PAMELA D. EDGE,**

      **Plaintiff,**

**vs.**                               **Case No. 1:12cv14-CAS**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

      **Defendant.**

_____/


<u>**MEMORANDUM OPINION AND ORDER**</u>

      This is a Social Security case referred to me upon consent of the parties and reference by District Chief Judge M. Casey Rodgers.   Doc. 7.   The Court concludes that the decision of the Commissioner should be affirmed.

**I.   Procedural History of the Case**

      On September 4, 2008, Plaintiff, Pamela D. Edge, applied for Supplemental Security Income (SSI) benefits pursuant to under Title XVI of the Social Security Act (Act) for a period of disability with an alleged onset date of December 21, 2006.   R. 10, 102-05, 111, 117.   (Citations to the Record shall be by the symbol R. followed by a page number that appears in the lower right corner.)   Plaintiff alleged disability due to bipolar disorder. *Id.* at 117.

Plaintiff's claim was denied initially on December 11, 2008, and upon reconsideration on April 21, 2009. *Id.* at 10, 54-57, 60-61. On June 15, 2009, Plaintiff requested a hearing. *Id.* at 10, 49-51. On November 9, 2010, an evidentiary hearing was held in Orlando, Florida, (according to the Transcript of hearing) and conducted by Administrative Law Judge Robert D. Marcinkowski. *Id.* at 20-21, 23. Plaintiff was represented by Pamela C. Dunmore, a non-attorney. *Id.* Howard S. Feldman, Ed.D., testified by telephone as an impartial vocational expert (VE). *Id.* at 10, 21, 23, 41-47, 101 (Resume).

At the outset of the hearing, Plaintiff's representative advised that the alleged onset date would be amended to January 8, 2008. *Id.* at 10, 24. On January 14, 2011, the ALJ entered his Decision concluding that Plaintiff is not disabled. *Id.* at 20.

On December 28, 2011, the Appeals Council denied Plaintiff's request for review. *Id.* at 1-3. On January 20, 2012, Plaintiff filed a complaint requesting judicial review of the Commissioner's final decision. Doc. 1. Both parties filed memoranda of law, docs. 16 and 19, which have been considered.

## II. Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1. Plaintiff was born on November 2, 1964; was 43 years old at the time the application was filed; and 46 years old at the time of the hearing. R. 10, 18, 25.

2. Plaintiff "has not engaged in substantial gainful activity since September 4, 2008, the application date." *Id.* at 12, 20.

3. Plaintiff has several "severe impairments: an effective disorder; borderline intellectual functioning; and, a history of polysubstance abuse." *Id.* at 12, 20.

4.  Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. at 12, 20.

5.  Plaintiff "has the residual functional capacity [RFC] to perform a full range of work at all exertional levels but with the following non-exertional limitations: limited to the performance of simple routine tasks with occasional interaction with others." *Id*. at 15, 20.

6.  Plaintiff "is capable of performing past relevant work as a groundskeeper or general laborer.   This work does not require the performance of work-related activities precluded by the claimant's [RFC]."   *Id*. at 18, 20.

7.  Plaintiff is able to perform the requirements of representative occupations such as warehouse worker, commercial cleaner, or fast-food worker, at the unskilled level.   *Id*. at 19.

8.  Plaintiff "has not been under a disability, as defined in the Social Security Act, since September 4, 2008, the date the application was filed."   *Id*. at 20.

## III.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).   "Substantial evidence is more than a scintilla, but less than a preponderance.   It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).   "The Commissioner's factual findings are conclusive if supported by substantial evidence."   Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[1]

---

[1]   "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."   Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).   "A 'substantial evidence' standard,

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" <u>Bloodsworth</u>, 703 F.2d at 1240 (citations omitted). A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. <u>Barnhart v. Walton</u>, 535 U.S. 212 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 416.920(a)(4)(i)-(v):

---

however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 416.920(a)(4)(v). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV.  Evidence

### A. Medical and Other Evidence

Plaintiff does not disagree with the factual findings derived from the medical and other evidence submitted to the ALJ during the evidentiary hearing.   *See* Doc. 16. Rather, Plaintiff argues that the ALJ did not include all of Plaintiff's mental limitations in a hypothetical question posed to Dr. Feldman, the VE, and that the ALJ's RFC determination is erroneous.   *Id.* at 5-12.   Medical and other evidence presented to the ALJ is set forth in the ALJ's Decision at pages 12 through 19 and is incorporated herein. R. 12-18.   Plaintiff's testimony at the hearing is summarized by the ALJ throughout his Decision and is also incorporated by reference.   *See, e.g., id.* at 13-14, 17.

After determining that Plaintiff has not engaged in substantial gainful activity since September 4, 2008, and that Plaintiff has three severe impairments, including an affective disorder, borderline intellectual functioning, and a history of polysubstance abuse, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.   *Id.* at 12. Plaintiff does not challenge this determination.

The ALJ analyzed this issue in light of Listings 12.04 and 12.05 set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.   R. 12-15.   Listing 12.04 (affective disorders) is "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.   Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.   The required level of severity for these disorders is met when the requirements in both [paragraphs] A and B

are satisfied, or when [paragraph] C are satisfied." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04. At least two of the four listed criteria must be satisfied: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id.*

The ALJ found that Plaintiff had *mild* restrictions of daily living; *moderate* difficulties in social functioning; and *moderate* difficulties in concentration, persistence, or pace; and *no* episodes of decompensation, which have been of an extended duration. *Id.* at 13-14 (emphasis added). Therefore, the ALJ found that the paragraph "B" criteria of Listing 12.04 (paragraph "D" of Listing 12.05) were not met. *Id.* at 14. Based on his review of the medical records, the ALJ also found that Plaintiff's mental impairment did not satisfy the paragraph "C" criteria (Listing 12.04). *Id.*

Nevertheless, the ALJ stated that the paragraph "B" criteria (paragraph "D" of Listing 12.05) are not the RFC

> assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following [RFC] assessment reflects the degree of limitation [the ALJ] has found in the "paragraph B" mental function analysis.

*Id.*[2]

---

[2] Then, the ALJ determined that the requirements of paragraphs "A"-"C" of Listing 12.05 were not met: Plaintiff "is not dependent upon others for her personal needs" (paragraph "A"); Plaintiff "does not have a valid verbal, performance, or full scale IQ of 59 or less" and because Plaintiff "appears to be functioning within the low average or

In light of this framework and before considering step four of the sequential evaluation process, *see id.* at 11, the ALJ made findings regarding Plaintiff's RFC following a two-step process: (1) whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the Plaintiff's pain or other symptoms and (2) if so, whether the intensity, persistence, and limiting effects of Plaintiff's symptoms limit Plaintiff's functioning.   At this point, the ALJ discussed the relevant medical and other evidence presented.   *Id.* at 15-18.

After considering this evidence, including Plaintiff's testimony, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[;] however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment."   *Id.* at 17.   The ALJ gave several reasons for his RFC assessment, including according "greater weight" to Dr. Benet's opinion, although the opinion was not "accepted in its entirety."   *Id.* at 17-18, 383-91 (Dr. Benet's psychological evaluation).   The ALJ rendered the following RFC for Plaintiff: "4.   After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform a full range of work at all exertional levels but with the following non-exertional limitations: limited to the performance of simple routine

---

borderline range of intelligence" (paragraph "B"); and the paragraph "C" criteria of Listing 12.05 are not met because Plaintiff "does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."   *Id.*   The ALJ further noted: "Although the claimant's representative argued that considering the evidence of the IQ testing, the claimant's impairment would meet the listing of 12.05, [*see* R. 37-38], there is no *valid* evidence of IQ scores within the range of 60 through 70 nor is there evidence supporting or demonstrating onset of the impairment before age 22."   *Id.* at 15.

tasks with occasional interaction with others." *Id.* at 15.

After Plaintiff testified during the hearing, Dr. Feldman testified without objection to his credentials. *Id.* at 42. Dr. Feldman's testimony assisted the ALJ in making the steps four and five determinations.

The ALJ advised Dr. Feldman that Plaintiff testified that she had some past relevant work although not of extended duration. The ALJ provided a brief summary of Plaintiff's descriptions of her past work and Plaintiff's representative agreed with the summary. *Id.* at 42-43. Dr. Feldman did not believe the past work was "that relevant" because "it's all less than six months," although he provided the Dictionary of Occupational Titles (DOT) number for each job: cashier, groundskeeper, and general laborer. *Id.* at 43-44.

The ALJ then asked Dr. Feldman a hypothetical question:

> Q Alright, let give you a hypothetical question. Please assume that you're dealing with an individual who is currently 46 years old with an eighth grade education and past relevant work as you identified. Further assume that this individual has not alleged any physical limitations however there are some mental limitations that I want you to consider. The individual I'm describing can only perform simple routine tasks. So would that individual that I described be able to do any of the claimant's past relevant work as performed or is generally performed in the national economy?

*Id.* at 44. While not entirely clear, it appears Dr. Feldman opined that "[n]ot [all] of that work would be necessarily ruled out under the hypothetical, Judge." *Id.*; *see* doc. 16 at 11 (Plaintiff quoted the answer in her memorandum and added the word "all" to the reported answer.).

The ALJ added another limitation "that the individual [he described] can only have occasional interaction with others" and then inquired: "Would that individual be able to do

those jobs as you described as past relevant work?  R. 44.  Dr. Feldman opined this limitation ruled out "cashiering," but not work as a groundskeeper or general laborer.  *Id.* at 44-45.[3]

At step four and based on the testimony of Dr. Feldman regarding Plaintiff's *past relevant work,* such as a groundkeeper or general laborer, and his response to the hypothetical questions (with the restriction of occasional interaction with others) posed by the ALJ, *id.* at 44-45, the ALJ concluded that in comparing Plaintiff's RFC with the mental demands of her past relevant work, Plaintiff is able to perform work as a groundskeeper or general laborer "as actually and generally performed."  *Id.* at 18.

At step five, the ALJ noted in his Decision that "there may some question whether the jobs of groundskeeper and general laborer were performed at the substantial gainful activity level and thus can be determined to be past relevant work, " and, as a result, the ALJ made an alternative finding after discussing the issue with Dr. Feldman.  *Id.* at 18, 45-46.

The ALJ considered Plaintiff's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines (the Grids) and further noted that Plaintiff's "ability to perform work at all exertional levels has been compromised by

---

[3]  After Dr. Feldman testified in response to the ALJ's questions, and regarding the above-quoted hypothetical question, Plaintiff's representative asked Dr. Feldman to further assume that such "a person would have periods of decomposition where she would deteriorate in her ability to work two to three --."  *Id.* at 46.  Dr. Feldman opined that if such a person were unable to attain a certain amount of minimal industrial output, "then they would not be able to perform competitive work but would be subject to sheltered employment."  *Id.* at 46-47.  Plaintiff's representative advised that the additional facts were based on Dr. Garmon's psychological assessment, Exhibit 4F, that indicated, in part, that Plaintiff "would decompensate under pressure."  *Id.* at 47, 271, 281.

non-exertional limitations.   *Id.* at 19, 45-46.   Dr. Feldman testified that the job of

warehouse worker (with "very little interaction") and commercial cleaner ("calling for

very little interaction") are medium exertional work at the unskilled level (SVP of 2).

The job of fast food worker is light exertional work at the unskilled level.   *Id.* at 45-46.

These jobs are available in the central Florida area and in the national economy.

Based on Plaintiff's age, education work experience, and RFC, Dr. Feldman

opined that such an individual (Plaintiff) would be able to perform the requirements of

representative occupations such as warehouse worker, commercial cleaner, or fast

food worker.   *Id.* at 19, 45-46.   The ALJ determined that Dr. Feldman's testimony "is

consistent with the information contained in the" DOT.   *Id.* at 19; *see id.* at 46.

The ALJ completed his assessment at step five, and concluded: "Based on the

credible testimony of the vocational expert, the undersigned concludes that,

considering the claimant's age, education, work experience, and [RFC], the claimant is

capable of making a successful adjustment to other work that exists in significant

numbers in the national economy."   *Id.* at 19.   "A finding of 'not disabled' is therefore

appropriate under the framework of section 204.00 in the Medical-Vocational

Guidelines."   *Id.*   Ultimately, the ALJ concluded that Plaintiff was not disabled since

September 4, 2008, the application date.   *Id.* at 20.

## V.  Legal Analysis

### A.  Substantial Evidence Supports the ALJ's RFC Determination

Plaintiff argues the ALJ should have included additional mental limitations in the

RFC assessment.   Doc. 16 at 5-12.   (Plaintiff did not allege disability due to any

physical limitation. *See, e.g.,* R. 44, 114, 117, 140, 150.) The ALJ determined that Plaintiff retained the RFC for a full range of work at all exertional levels with limitations for simple routine tasks and occasional interaction with others. *Id.* at 15-18. This finding properly described Plaintiff's work-related limitations from mental impairments and is supported by the record. *Id.* at 12-18.

The RFC is what a claimant can still do despite her limitations. *See* 20 C.F.R. § 416.945(a). It is an assessment based upon all of the relevant evidence including a claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining a claimant's RFC lies with the ALJ. *See* 20 C.F.R. § 416.946(c).

Plaintiff stated that she cared for her own personal needs, prepared simple meals, cleaned, did laundry, ventured out daily, shopped, watched television, did puzzles, watched television, rode bicycles with others, and attended church services. R. 13, 38-41, 136-40, 146, 148-49, 162-63, 260, 268, 278, 385.

Plaintiff reported that she had difficulty handling stress, paying attention and following instructions, and had some self-isolating tendencies, but she also stated that she did not like to be alone. *Id.* at 13, 140, 149, 166. Plaintiff kept in touch with her family and had friends. *Id.* at 13, 148, 149, 260. Plaintiff also could perform simple tasks and make meals requiring one to three hours of labor. *Id.* at 13, 137, 140, 147, 164.

The record also indicates that Plaintiff had several mental-status examinations beginning in and around 2003. The examinations consistently report, in part, Plaintiff's

bipolar disorder and other disorders. Plaintiff was noted generally to be pleasant and cooperative and had adequate functioning in attention and concentration. *Id.* at 13, 16-17, 114, 218, 230-31, 243, 261, 268, 278, 285, 288, 381, 383, 386. Over the years, Plaintiff's judgment and insight have been rated as fair, partial, poor, adequate, and good. *Id.* at 13-14, 210, 230, 234-35, 243, 261, 268, 282, 285, 288, 332-33, 338-40, 383, 386; *but see id.* at 243-46, 255, 271, 281, 338-39, 389-90 for several negative findings.

Generally, medical providers did not note severe symptoms from mental impairments despite Plaintiff's sporadic mental-health treatment and not in frequent compliance, although intervening inpatient admissions are noted. *Id.* at 16, 214, 229-30, 266-70. Further, Plaintiff reported some improvement with psychotropic medication. *Id.* at 16, 210, 231, 236, 368. *See generally* Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) (quoting Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.")). Overall, the record did not show debilitating symptoms from mental impairments that precluded Plaintiff from performing any work.

Plaintiff argues that the ALJ should have included his findings from the Psychiatric Review Technique (PRT) into the RFC. R. 12-18.[4] *See* doc. 16 at 5-6. In

---

[4] The Commissioner's regulations require an ALJ to use the "special technique" dictated by the PRT in evaluating mental impairments. 20 C.F.R. § 416.920a(a). The special technique requires separate evaluations of how the claimant's mental impairment impacts the claimant in four broad functional areas. *Id.* § 416.920a(c)(3)-(4). The ALJ is required to document the application of the PRT, to discuss the pertinent findings and conclusions based on application of the PRT, and to make specific findings as to the degree of limitation in each of the four functional areas in the written decision. *Id.*

making the PRT findings, the ALJ found that Plaintiff had *mild* limitations in activities of

daily living; *moderate* limitations in social functioning and concentration, persistence

and pace; and *no* episodes of decompensation.   R. 12-15.   As noted by the ALJ,

these PRT findings

> are not a [RFC] assessment, but are used to rate the severity of mental
> impairments at steps two and three of the sequential evaluation process.   The
> mental residual functional capacity assessment used at steps four and five of the
> sequential evaluation process requires a more detailed assessment by itemizing
> various functions contained in the broad categories found in paragraph B of the
> adult mental disorders listings in 12.00 of the Listing of Impairments (SSR
> 96-8p).   Therefore, the following residual functional capacity assessment
> reflects the degree of limitation the undersigned has found in the "paragraph B"
> mental function analysis.

R. 14.

The ALJ expressly incorporated his PRT findings into the RFC.   *Id.* at 12-18.   In

particular, the ALJ included a restriction for simple, routine tasks that accounted for

moderate limitations in concentration, persistence, and pace and a restriction for

occasional interaction with others that accounted for moderate limitations in social

functioning.   *Id.*   Accordingly, the RFC was consistent with the PRT findings, as well

as consistent with the record as a whole.

In Winschel v. Astrue, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit held

that the ALJ erred with respect to that case because the ALJ did not include in the

---

§ 416.920a(e)(4).   An ALJ's failure to complete a PRT, append a PRT to the written
decision *or* incorporate the PRT's mode of analysis into the ALJ's findings and
conclusions in the written decision warrants a remand to the Commissioner.   Moore, 405
F.3d at 1214.   As noted by the ALJ, the "State agency consultants did not assess
[Plaintiff's] mental functionality [as per the PRT] as there was insufficient evidence to
assess the impact of [Plaintiff's] mental impairment and [Plaintiff] was unable to attend a
needed consultative examination."   R. 17, 312-325; 345-358.

hypothetical question to the VE that the claimant had moderate limitation in concentration, persistence, or pace, as found by the ALJ at step two of the sequential process.   *Id.* at 1181 (explaining that moderate limitations affecting work-related abilities must be accounted for in the RFC and hypothetical question to vocational expert.).   The Eleventh Circuit ruled in this manner not because the ALJ's two-step moderate limitation in concentration, persistence, or pace finding must always be included in the RFC or hypothetical question based on that RFC; rather the Eleventh Circuit reached this conclusion because the ALJ failed to adequately explain how the medical evidence showed that the claimant could still perform the mental tasks of work despite his moderate limitation in concentration, persistence, or pace.   *Id.*   "But the ALJ did not indicate that medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise *implicitly* account for the limitation in the hypothetical.   Consequently, the ALJ should have explicitly included the limitation in his hypothetical question to the" VE.   *Id.*   (emphasis added).[5]

Plaintiff cites the findings of consultative examiner Joe Garmon, Ph.D., in support of her argument that the ALJ should have included additional mental limitations in the RFC.   *See* doc. 16 at 8-9 (citing R. 269, 271, 279, 281).   Although an ALJ considers the opinions of State agency medical or psychological consultants, an ALJ is

---

[5]   "Other circuits have also rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work. . . .   But when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations."   *Id.* at 1180 (citations omitted).

not bound by their findings.   *See* 20 C.F.R. § 416.927(f)(2).   Here, the ALJ analyzed Dr. Garmon's findings of January 8, 2008, and properly discounted his opinions that were improper, internally inconsistent, and inconsistent with the record as a whole. R. 16-17, 266-71, 276-81.

First, Plaintiff relies on Dr. Garmon's opinion that Plaintiff was not capable of stable competitive employment.   *Id.* at 17, 271, 281; *see* doc. 16 at 8-9.   The ALJ properly rejected this opinion because it is an issue solely reserved to the Commissioner.   R. 17.   *See* House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007) (noting that an opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination).   The ALJ noted that this opinion is improper because it does not constitute a medical assessment of the claimant's retained abilities; rather, it was a vocational opinion.   R. 17.

Plaintiff also cites Dr. Garmon's opinions indicating that Plaintiff would "decompensate" if she was stressed or criticized by supervisors or co-workers.   *Id.* at 17, 266-71, 276-81; *see* doc. 16 at 9.   The ALJ provided good cause for rejecting this opinion of Dr. Garmon.   R. 17.   In particular, the ALJ noted that Dr. Garmon appeared not to weigh that the claimant was "non-compliant with medication at that time" of the examination; that the mental status examination and GAF score "indicated what appears to be adequate functionality for at least unskilled work"; and that she was receiving "only sporadic mental health treatment" at the time of his assessment.   *Id.* at 16-17, 266-71, 276-81.   (In addition, a later observation (June 23, 2008) of Plaintiff by

Briccio Valdez, M.D. did not indicate severe symptoms from mental impairments
although multiple personal problems are noted.   *Id.* at 282-84. "The patient is a
fairly-developed, fairly-nourished, ambulatory white female in no distress.   She is alert
and oriented x3.   Affect is blunt.   Mood is subdued.   Memory is intact.   She denies
any paranoid delusions and denies any auditory or visual hallucinations.   She denies
any suicidal or homicidal ideations." *But see id.* at 326-342 (Meridian admission and
discharge notes).)

   The ALJ properly discounted this opinion of Dr. Garmon and determined that
Dr. Garmon's consultative-examination findings, as well as the record as a whole,
showed Plaintiff had "adequate functionality for at least unskilled work."   *Id.* at 17,
266-71, 276-81.

   Plaintiff refers to the findings of consultative examiner William Benet, Ph.D.   *Id.*
at 16-18.   *See* doc. 16 at 9-10 (citing R. 383-91).   In particular, Plaintiff notes
Dr. Benet's findings that Plaintiff had marked limitations for carrying out complex
instructions and making judgments on complex work-related decisions.   *Id.* at 389-90.
The ALJ, however, included limitations in the RFC accommodating Dr. Benet's finding.
*Id.* at 16-18, 389-90.   Specifically, the ALJ eliminated complex instructions and
complex work-related decisions from the RFC by limiting Plaintiff to unskilled work and
simple, routine tasks.   *Id.* at 16-18, 43-45, 389-90.

   Plaintiff also cites Dr. Benet's finding that Plaintiff had a marked restriction in
appropriate responses to usual work situations and changes in routine work settings.
*Id.* at 18.   *See* doc. 16 at 9-10 (citing R. 390).   The ALJ properly noted that this opinion

was not supported by the evidence.   *Id*. at 17-18, 390.

First, the ALJ recounted Dr. Benet's consultative examination, during which Plaintiff was "friendly and cooperative," "very articulate," and coherent (thinking organized and goal directed).   "General intellectual ability was estimated to be low average.   Judgment and insight at this time appeared to be adequate."   *Id*. at 13, 16, 386.   The ALJ also noted that Dr. Benet found only a mild limitation for interacting with the public and moderate limitation in interacting with supervisors and co-workers.   *Id*. at 15, 390.   The ALJ noted that the RFC limitation for simple routine tasks with only occasional interactions with others was consistent with Dr. Benet's findings and the record as a whole.   *Id*. at 16-18, 383-91.   Finally, the ALJ noted that Plaintiff's stabilization of symptoms with medication compliance did not support Dr. Benet's opinion that Plaintiff suffered a marked restriction in responding to work situations and routine work changes.   *Id*. at 18, 383-91.   The ALJ properly rejected Dr. Benet's finding that Plaintiff had a marked restriction in responding to usual work situations and changes in work settings.   *Id*. at 17-18, 390.

Throughout her memorandum, Plaintiff relies on evidence that pre-dates her alleged onset date of January 8, 2008.   *See* doc. 16 at 6-8.   For example, Plaintiff notes Global Assessment of Functioning (GAF), Axis V, scale ratings of 30 from September 2003, 50 from November 2006, and 50 from June 2007.   *See* doc. 16 at 6-8 (citing R. 211, 227-28).

The American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) (4th Ed. Text Revision 2000) states that the GAF Scale

is used to report "the clinician's judgment of the individual's overall level of functioning" (with regard to only psychological, social, and occupational functioning) and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." *See* DSM-IV-TR 30-32, 34.[6]

Notably, Plaintiff had significant drug and alcohol issues during this time. R. 33-34, 228-31, 235-36, 238-39, 253, 267, 271, 275, 277, 281, 295, 304, 340. Based on time and substance abuse, these GAF scale ratings and related medical records appear to have little significance to Plaintiff's functioning after her amended alleged onset date, January 8, 2008. Further, neither Social Security regulations nor case law require an ALJ to determine the extent of an individual's mental impairment based solely on a GAF scale ratings. In fact, the Commissioner has declined to endorse the GAF scale ratings for "use in the Social Security and SSI disability programs," and has indicated that GAF scale ratings have no "direct correlation to the severity requirements of the mental disorders listings." 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000).

The GAF scale ratings in the record after Plaintiff's amended alleged onset date were 50-55 (current) (Dr. Benet, *id.* at 387), 55, 55, 55, 60 (Dr. Garmon, *id.* at 270, 280), and 60. R. 16, 270, 280, 282, 284-85, 289, 342, 387.[7] A GAF scale rating of 51 to 60

---

[6] A GAF scale rating of 21-30 is indicative of behavior which is considerably influenced by delusions or hallucinations, or serious impairment in communication or judgment, or inability to function in almost all areas. DSM-IV-TR at 34. A GAF scale rating of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational or school functioning. DSM-IV-TR at 34.

indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.   DSM-IV-TR at 34.   *See* R. 16, 270, 280, 282, 284-85, 289, 342, 387. The ALJ's RFC finding was consistent with the GAF scale ratings suggesting moderate symptomology.

In conclusion, the record does not support Plaintiff's allegation that she suffered mental work-related limitations in excess of those described in the RFC.   *Id.* at 12-18. The ALJ included restrictions due to mental impairments, including limitations for simple routine tasks and interaction with others, which were consistent with the entire record. *Id.*   Therefore, substantial evidence supports the ALJ's RFC determination.

## B.   The ALJ Properly Determined Plaintiff Could Perform Other Work

Plaintiff argues that the hypothetical question considered by the vocational expert did not include all of Plaintiff's mental limitations.   *See* doc. 16 at 5, 12.[8]   An ALJ, however, "is not required to include findings in the hypothetical that the ALJ properly rejects."   Wright v. Comm'r Soc. Sec., 327 F. App'x 135, 137 (11th Cir. 2009) (per curiam) (unpublished) (citing Crawford v. Comm'r Soc Sec., 363 F.3d 1155, 1161 (11th Cir. 2004)).   Substantial evidence supports the ALJ's vocational findings.

At step five of the sequential evaluation process, the ALJ asked the vocational

---

[7]   On January 7, 2009, Plaintiff was admitted to Meridian Behavioral Healthcare, Inc., (Meridian) on an emergency basis.   On admission, Plaintiff's GAF scale rating was 25, *id.* at 339-40, 342; a 40 scale rating diagnostic impression, *id.* at 334, and a 60 scale rating discharge diagnosis on January 8, 2009, with a fair prognosis given, *id.* at 342. *Id.* at 326-42.

[8]   The ALJ also determined that Plaintiff could perform past relevant work as a groundskeeper or general laborer.   R. 18.   The ALJ noted, however, that there was some question as to whether this work constituted substantial gainful activity.   *Id.* Accordingly, the ALJ proceeded to step five.   *Id.* at 18-19.

expert to consider a hypothetical claimant with Plaintiff's age, education, work

experience, and a RFC for a full range of work at all exertional levels with limitations for

simple routine tasks and occasional interaction with others.   R. 19, 44-46.   The

vocational expert responded that such a person could perform the medium, unskilled

work of warehouse worker or commercial cleaner and the light, unskilled work of

fast-food worker and all of these jobs exist in substantial numbers in the national

economy.   *Id.* at 45-46.   The question was properly formulated such that it included

Plaintiff's credible mental limitations, so the expert's testimony that Plaintiff could

perform other work constitutes substantial evidence supporting the Commissioner's

decision.   *Id.   See* <u>Phillips</u>, 357 F.3d at 1240 ("A vocational expert is an expert on the

kinds of jobs an individual can perform based on his or her capacity and impairments.").

## VI.   Conclusion

Considering the record as a whole, the findings of the ALJ are based upon

substantial evidence in the record and the ALJ correctly followed the law.   Accordingly,

pursuant to 42 U.S.C § 405(g), the decision of the Commissioner to deny Plaintiff's

application for Social Security benefits is **AFFIRMED** and the Clerk is **DIRECTED** to

enter judgment for the Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on November 15, 2012.


**s/   Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


Case No. 1:12cv14-CAS